MARY LaVERNE HAYES, as Ex'r of the Estate of John W. Hayes, Deceased, *et al.*, Plaintiffs-Appellants, v. ILLINOIS POWER COMPANY, Defendant-Appellee.

Fourth District   No. 4—91—0372

Opinion filed January 30, 1992.

Stephen R. Myers, of Clinton, for appellants.

Arnold F. Blockman and Jerome P. Lyke, both of Hatch, Blockman, McPheters, Fehrenbacher & Lyke, of Champaign, for appellee.

JUSTICE McCULLOUGH delivered the opinion of the court:

On April 24, 1991, the circuit court of Piatt County dismissed amended counts VI, VII, and VIII of plaintiffs' complaint for negligent and intentional infliction of emotional distress. The court dismissed count VI finding it was duplicative of count V since count V alleged an injury for which emotional distress could be compensated. Counts VII and VIII were dismissed because the facts alleged did not show the "extreme and outrageous conduct" necessary to support a cause of action for the intentional infliction of emotional distress. Plaintiffs contend (1) counts V and VI are not duplicative as they allege two separate causes of action and (2) counts VII and VIII adequately plead the tort of intentional infliction of emotional distress. We reverse in part and affirm in part.

On May 14, 1989, John W. Hayes (decedent) was operating a plow on his farm in Piatt County. Decedent's plow became entangled with a guy wire attached to one of defendant's utility poles. As decedent attempted to untangle the guy wire from the plow, the guy wire became slack and came into direct contact with an uninsulated 7,200-volt transmission wire at the top of the utility pole. The guy wire became electrically charged and decedent was instantly electrocuted.

Plaintiff Todd Hayes (Todd), decedent's grandson, was also plowing in a field near decedent. Todd saw his grandfather being electrocuted, went over to him and reached out for him. A current of electricity passed through decedent to Todd, causing him to be thrown back from decedent's body. Todd received severe burns and a shock to his nervous system.

Plaintiff Jack Hayes (Jack), decedent's son, learned of the occurrence and rushed to the scene of the accident. Jack was restrained by individuals at the scene from coming into contact with decedent. Electricity continued to flow through decedent's body for a period in excess of 45 minutes, thereby causing the body to be engulfed in flames. Thereafter, defendant shut off the electricity running through the guy

wire. As Jack watched, firemen on the scene extinguished the flames about and on the body of decedent.

An eight-count complaint was filed by Mary LaVerne Hayes, as executor of decedent's estate, and Todd and Jack Hayes, individually. After defendant's motion to dismiss was partially granted, plaintiffs filed their first-amended counts III, VI, VII and VIII. Only count V of the original complaint and amended counts VI, VII, and VIII of the amended complaint are relevant to this appeal.

Count V of the original complaint was brought by Todd and alleged that defendant was negligent in failing to properly insulate, ground, and mark the guy wire. Todd sought damages for his physical injuries and pain and suffering. Amended count VI, brought by Todd, alleged the negligent infliction of emotional distress, and amended count VII, also brought by Todd, alleged the intentional infliction of emotional distress. Count VIII, brought by Jack, alleged the intentional infliction of severe emotional distress.

On defendant's motion, the court dismissed, with prejudice, amended counts VI, VII, and VIII of plaintiffs' complaint. The court found count VI was duplicative of count V in that count V alleged an injury to Todd for which emotional distress could be compensated. The court further found count VI did not adequately plead that Todd suffered physical injury or illness as a result of the emotional distress nor did it adequately plead Todd suffered emotional distress due to fear for his own safety. The court found the facts alleged in count VII did not show the "extreme and outrageous conduct" necessary to support a cause of action for intentional infliction of emotional distress. Finally, the court found the facts alleged in count VIII also failed to show the "extreme and outrageous conduct" necessary to support a cause of action for the intentional infliction of emotional distress.

Because we are reviewing the trial court's decision to dismiss a cause of action under section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—615), we must determine whether the complaint, when viewed in the light most favorable to the plaintiff, alleges facts sufficient to establish a cause of action upon which relief may be granted. In making this determination, we must take all well-pleaded facts in the challenged pleading as true, while conclusions of law contained in the challenged pleading will not be taken as true, unless supported by specific factual allegations. (*Ziemba v. Mierzwa* (1991), 142 Ill. 2d 42, 566 N.E.2d 1365.) In reviewing the grant of a motion to dismiss, all well-pleaded facts must be taken as true, as well as all reasonable inferences which may be

drawn therefrom. *Wait v. First Midwest Bank/Danville* (1986), 142 Ill. App. 3d 703, 491 N.E.2d 795.

Prior to 1983, Illinois courts adhered to the "impact rule" in cases of negligent infliction of emotional distress. Under this rule, recovery for negligently caused emotional distress suffered by a direct victim or bystander who witnessed the injury of another was consistently denied unless accompanied by a contemporaneous physical injury or impact to the plaintiff. (*Braun v. Craven* (1898), 175 Ill. 401, 51 N.E. 657.) In *Rickey v. Chicago Transit Authority* (1983), 98 Ill. 2d 546, 457 N.E.2d 1, the supreme court adopted a new standard for determining whether bystanders should be allowed to recover for negligently inflicted emotional distress. The court stated:

> "That standard has been described as the zone-of-physical-danger rule. Basically, under it a bystander who is in a zone of physical danger and who, because of the defendant's negligence, has reasonable fear for his own safety is given a right of action for physical injury or illness resulting from emotional distress. This rule does not require that the bystander suffer a physical impact or injury at the time of the negligent act, but it does require that he must have been in such proximity to the accident in which the direct victim was physically injured that there was a high risk to him of physical impact. The bystander, as stated, must show physical injury or illness as a result of the emotional distress caused by the defendant's negligence." (*Rickey*, 98 Ill. 2d at 555, 457 N.E.2d at 5.)

In that case, the plaintiff was an eight-year-old boy who witnessed his five-year-old brother nearly being choked to death when part of his clothing became entangled in the base of an escalator operated by defendant. The court, after adopting the above as the new standard, held the plaintiff could file an amended complaint to comport with the new standard.

In *Siemieniec v. Lutheran General Hospital* (1987), 117 Ill. 2d 230, 512 N.E.2d 691, the parents of a child born with hemophilia sought damages for their emotional distress caused by the defendant's allegedly negligent genetic counseling. The plaintiffs asserted they would have aborted the child had they known he would be born with this disease, and defendants had failed to accurately advise them of the risk of the child being born a hemophiliac. The supreme court held the plaintiffs had no cause of action for negligent infliction of emotional distress since their complaint failed to allege that they were endangered by defendant's negligence and failed to allege they had suffered or would suffer any physical injuries or illness resulting from

the emotional distress allegedly caused by defendant's negligence. *Siemieniec*, 117 Ill. 2d at 261, 512 N.E.2d at 707.

■■■ Finally, most recently in *Corgan v. Muehling* (1991), 143 Ill. 2d 296, 574 N.E.2d 602, the plaintiff sought damages for her emotional distress caused by the defendant's conduct in convincing her to engage in sexual intercourse with him under the guise of therapy. At the time of the sexual relationship, defendant held himself out to be a registered psychologist and plaintiff was under his professional care. The supreme court stated the substitution of the zone-of-physical-danger rule for the impact rule in *Rickey* applies only as to bystanders.

> "*Rickey*, therefore, abandoned the impact rule as it applied to bystanders and adopted the zone-of-physical-danger rule as the standard under which they can recover damages for negligent infliction of emotional distress. *Rickey* did not, however, define the scope of negligent infliction of emotional distress as it applies to direct victims. The court in *Rickey* was solely concerned with defining the parameters of *bystander* recovery.
>
> * * *
>
> 'The distinction between a direct victim and a bystander is more than just a play on semantics ***. *** [A] defendant owes a duty to only those persons who suffer emotional distress (and accompanying physical manifestations) as a result of being within the "zone of danger" created by a negligently caused accident. This zone of danger, because it is created by the accident, encircles it; hence, the accident is, in effect, the "nucleus" of the surrounding zone of danger. A person is within an accident's zone of danger (and able to seek recovery under *Rickey*) when he is sufficiently close to that accident such that he is subjected to a high risk of physical impact emanating *from the accident itself.*' " (Emphasis in original.)

(*Corgan*, 143 Ill. 2d at 304-06, 574 N.E.2d at 605-06, quoting *Lewis v. Westinghouse Electric Corp.* (1985), 139 Ill. App. 3d 634, 639-40, 487 N.E.2d 1071, 1074-75 (Linn, J., dissenting).)

The court concluded the *Rickey* zone-of-danger test did not apply because plaintiff was a direct victim and not a bystander. The court further concluded the trial court acted properly in not dismissing plaintiff's cause of action for failure to allege physical symptoms of emotional distress, noting it "[had] not lost its faith in the ability of jurors to fairly determine what is, and is not, emotional distress." *Corgan*, 143 Ill. 2d at 312, 574 N.E.2d at 609.

Todd contends he was both a direct victim and a bystander and thus seeks compensation for two separate and distinct injuries. Todd claims he suffered emotional distress as a result of the direct injuries he received and also suffered emotional distress from being in the zone of physical danger near his grandfather. Defendant contends Todd is a direct victim rather than a bystander because he received a physical injury and impact at the scene when he grabbed decedent. As such, he need only plead the elements of negligence, and any emotional distress caused by the allegedly negligent conduct of defendant would be compensable under the "pain and suffering" allegations in count V of the complaint.

The court in *Corgan* clearly stated *Rickey* applied only to bystanders and that direct victims only need to allege the elements of negligence. Here, Todd is both a direct victim and a bystander: he is a direct victim because he suffered physical injuries when he came into contact with decedent; he is also a bystander because he subsequently regained consciousness and remained in the zone of physical danger near decedent. He therefore may properly allege a claim for the pain and suffering he incurred as a direct victim of defendant's negligence (count V); and also a separate claim, as a bystander, for the negligent infliction of emotional distress which resulted from his being in the zone of physical danger near the decedent (count VI). Therefore, counts V and VI are not duplicative, but allege separate causes of action.

Furthermore, count VI adequately pleads the elements necessary for a cause of action in negligent infliction of emotional distress. Under *Rickey*, before a plaintiff can recover for negligently caused emotional distress, he himself must have been endangered by the negligence, and he must have suffered physical injury or illness as a result of the emotional distress caused by defendant's negligence. *Siemieniec*, 117 Ill. 2d at 261, 512 N.E.2d at 707.

Amended count VI of the complaint, in pertinent part, states:

"17. That during the time after Plaintiff was shocked and during the time that Plaintiff was forced to stand by and observe his Grandfather as above-described, the Plaintiff remained in close proximity to his Grandfather who was in contact with an energized guy wire.

18. That because of his proximity to his Grandfather during this time, the Plaintiff was in continuous danger of obtaining additional electrical shocks.

19. That the Plaintiff was in fear that he could become electrocuted while he was in close proximity to his Grandfather.

20. That the Plaintiff feared that he could become electrocuted if he again attempted to free his Grandfather from the energized guy wire.

21. That as a direct and proximate result of the negligence of the Defendant, the Plaintiff suffered extreme emotional distress.

22. That as a direct and proximate result of the emotional distress caused by the Defendant's negligence, the Plaintiff has sustained serious injury and illness and psychological damage."

Todd was clearly in such proximity to the accident that there was a high risk of physical impact. Todd had already been shocked when he grabbed his grandfather, and by remaining near the body, a chance existed of subsequent shocks from the electricity as well as burns or smoke inhalation from the flames. Moreover, Todd could reasonably fear for his own safety given the unpredictable nature of electricity and fire. Paragraphs 19 and 20 alleged Todd feared electrocution, which established a fear for his own safety.

Finally, the court concluded Todd failed to adequately plead physical injury resulting from the emotional distress. Paragraph 22 alleged that Todd suffered "serious injury and illness and psychological damage." This adequately states physical injury. The distinction between "serious injury and illness" and "psychological damage" indicates that "serious injury or illness" is physical in nature and "psychological damage" is the emotional distress.

■ Plaintiffs also contend they adequately pleaded a cause of action for the intentional infliction of emotional distress. The elements of the tort for intentional infliction of emotional distress are (1) extreme and outrageous conduct, (2) intent by the defendant to cause or a reckless disregard of the probability of causing emotional distress, (3) severe or extreme emotional distress suffered by the plaintiff, and (4) an actual and proximate causation of emotional distress by the defendant's outrageous conduct. (*Tobias v. Winkler* (1987), 156 Ill. App. 3d 886, 509 N.E.2d 1050.)

"[T]he conduct must be extreme and outrageous. The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions or trivialities. 'It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in

character, and so extreme in degree, as to go beyond all possible bounds of decency ***.' Restatement (Second) of Torts, sec. 46, comment d (1965)." (*Public Finance Corp. v. Davis* (1976), 66 Ill. 2d 85, 89-90, 360 N.E.2d 765, 767.)

Whether certain conduct can be characterized as extreme and outrageous so as to support a cause of action for the tort of intentional infliction of emotional distress necessarily depends on the facts of each case. *Tobias*, 156 Ill. App. 3d at 897, 509 N.E.2d at 1057.

Counts VII and VIII of plaintiffs' amended complaint contain numerous allegations relating to the manner in which defendant insulated, marked and maintained the guy wire and transmission poles. Paragraph 28 of the complaint states that the course of conduct taken by defendant was extreme and outrageous, exceeding all grounds usually tolerated by a person of ordinary sensibilities. Paragraph 29 alleges defendant intended to inflict severe emotional distress upon the plaintiff or acted recklessly in deliberate disregard of a high degree of probability that emotional distress would result. Paragraph 30 alleges that as a direct and proximate result of defendant's extreme and outrageous conduct, Todd suffered severe, permanent emotional distress. Count VIII contains the further allegation that Jack stood by and watched his father's body in flames for a period of time in excess of 45 minutes and watched the firemen extinguish the fire about decedent's body.

■ The court properly concluded plaintiffs' amended complaint did not state a cause of action for the intentional infliction of emotional distress. The conduct alleged by plaintiffs is neither extreme nor outrageous. At most, defendant's failure to properly ground and insulate the guy wire constitutes negligence. It is only the result of that negligence, *i.e.*, the burning of decedent's body, which can be characterized as extreme and outrageous.

Accordingly, for the foregoing reasons, we reverse the dismissal of count VI of plaintiffs' amended complaint and remand with directions to reinstate that count. We affirm the dismissal of counts VII and VIII of plaintiffs' amended complaint.

Affirmed in part; reversed in part and remanded with directions.

GREEN, P.J., and KNECHT, J., concur.